B1040 (FORM 1040) (12/24)

| ADVERSARY PROCEEDING COVER SHEET<br>(Instructions on Reverse) | ADVERSARY PROCEEDING NUMBER<br>(Court Use Only) |
|---|---|

| PLAINTIFFS<br>Matadoor Restaurant Group, LLC | DEFENDANTS<br>Stripe, Inc. and DoorDash, Inc. |
|---|---|
| **ATTORNEYS** (Firm Name, Address, and Telephone No.)<br>Christine E. Brimm, Esq., Barton Brimm, PA<br>P.O. Box 14805, Myrtle Beach, SC  29587 | **ATTORNEYS** (If Known) |
| **PARTY** (Check One Box Only)<br>☒ Debtor    ☐ U.S. Trustee/Bankruptcy Admin<br>☐ Creditor    ☐ Other<br>☐ Trustee | **PARTY** (Check One Box Only)<br>☐ Debtor    ☐ U.S. Trustee/Bankruptcy Admin<br>☐ Creditor    ☒ Other<br>☐ Trustee |

**CAUSE OF ACTION** (WRITE A BRIEF STATEMENT OF CAUSE OF ACTION, INCLUDING ALL U.S. STATUTES INVOLVED)

Rule 7065, Section 542 and Section 362.  Action for Injunction, Compel Turnover and Violation of Stay.

## NATURE OF SUIT

(Number up to five (5) boxes starting with lead cause of action as 1, first alternative cause as 2, second alternative cause as 3, etc.)

**FRBP 7001(a) – Recovery of Money/Property**
☒ 11-Recovery of money/property - §542 turnover of property
☐ 12-Recovery of money/property - §547 preference
☐ 13-Recovery of money/property - §548 fraudulent transfer
☐ 14-Recovery of money/property - other

**FRBP 7001(b) – Validity, Priority or Extent of Lien**
☐ 21-Validity, priority or extent of lien or other interest in property

**FRBP 7001(c) – Approval of Sale of Property**
☐ 31-Approval of sale of property of estate and of a co-owner - §363(h)

**FRBP 7001(d) – Objection/Revocation of Discharge**
☐ 41-Objection / revocation of discharge - §727(c),(d),(e)

**FRBP 7001(e) – Revocation of Confirmation**
☐ 51-Revocation of confirmation

**FRBP 7001(f) – Dischargeability**
☐ 66-Dischargeability - §523(a)(1),(14),(14A) priority tax claims
☐ 62-Dischargeability - §523(a)(2), false pretenses, false representation, actual fraud
☐ 67-Dischargeability - §523(a)(4), fraud as fiduciary, embezzlement, larceny
**(continued next column)**

**FRBP 7001(f) – Dischargeability (continued)**
☐ 61-Dischargeability - §523(a)(5), domestic support
☐ 68-Dischargeability - §523(a)(6), willful and malicious injury
☐ 63-Dischargeability - §523(a)(8), student loan
☐ 64-Dischargeability - §523(a)(15), divorce or separation obligation (other than domestic support)
☐ 65-Dischargeability - other

**FRBP 7001(g) – Injunctive Relief**
☐ 71-Injunctive relief – imposition of stay
☒ 72-Injunctive relief – other

**FRBP 7001(h) Subordination of Claim or Interest**
☐ 81-Subordination of claim or interest

**FRBP 7001(i) Declaratory Judgment**
☐ 91-Declaratory judgment

**FRBP 7001(j) Determination of Removed Action**
☐ 01-Determination of removed claim or cause

**Other**
☐ SS-SIPA Case – 15 U.S.C. §§78aaa *et.seq.*
☐ 02-Other (e.g. other actions that would have been brought in state court if unrelated to bankruptcy case)

| ☐ Check if this case involves a substantive issue of state law | ☐ Check if this is asserted to be a class action under FRCP 23 |
|---|---|
| ☐ Check if a jury trial is demanded in complaint | Demand $   TBD |
| Other Relief Sought | |

**B1040 (FORM 1040) (12/24)**

| BANKRUPTCY CASE IN WHICH THIS ADVERSARY PROCEEDING ARISES | | |
|---|---|---|
| NAME OF DEBTOR<br>Matadoor Restaurant Group, LLC | BANKRUPTCY CASE NO.  25-02698-hb | |
| DISTRICT IN WHICH CASE IS PENDING<br>South Carolina | DIVISION OFFICE<br>Greenville | NAME OF JUDGE<br>Burris |
| RELATED ADVERSARY PROCEEDING (IF ANY) | | |
| PLAINTIFF | DEFENDANT | ADVERSARY PROCEEDING NO. |
| DISTRICT IN WHICH ADVERSARY IS PENDING | DIVISION OFFICE | NAME OF JUDGE |
| SIGNATURE OF ATTORNEY (OR PLAINTIFF)<br><br>/s/ Christine E. Brimm | | |
| DATE<br><br>8/18/2025 | PRINT NAME OF ATTORNEY (OR PLAINTIFF)<br><br>Christine E. Brimm | |

## INSTRUCTIONS

The filing of a bankruptcy case creates an "estate" under the jurisdiction of the bankruptcy court which consists of all of the property of the debtor, wherever that property is located. Because the bankruptcy estate is so extensive and the jurisdiction of the court so broad, there may be lawsuits over the property or property rights of the estate. There also may be lawsuits concerning the debtor's discharge. If such a lawsuit is filed in a bankruptcy court, it is called an adversary proceeding.

A party filing an adversary proceeding must also complete and file Form 1040, the Adversary Proceeding Cover Sheet, unless the party files the adversary proceeding electronically through the court's Case Management/Electronic Case Filing system (CM/ECF). (CM/ECF captures the information on Form 1040 as part of the filing process.) When completed, the cover sheet summarizes basic information on the adversary proceeding. The clerk of court needs the information to process the adversary proceeding and prepare required statistical reports on court activity.

The cover sheet and the information contained on it do not replace or supplement the filing and service of pleadings or other papers as required by law, the Bankruptcy Rules, or the local rules of court. The cover sheet, which is largely self-explanatory, must be completed by the plaintiff's attorney (or by the plaintiff if the plaintiff is not represented by an attorney). A separate cover sheet must be submitted to the clerk for each complaint filed.

**Plaintiffs** and **Defendants.** Give the names of the plaintiffs and defendants exactly as they appear on the complaint.

**Attorneys.** Give the names and addresses of the attorneys, if known.

**Party.** Check the most appropriate box in the first column for the plaintiffs and the second column for the defendants.

**Demand.** Enter the dollar amount being demanded in the complaint.

**Signature.** This cover sheet must be signed by the attorney of record in the box on the second page of the form. If the plaintiff is represented by a law firm, a member of the firm must sign. If the plaintiff is pro se, that is, not represented by an attorney, the plaintiff must sign.

**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF SOUTH CAROLINA**

| | | |
|---|---|---|
| IN RE: | ) | CHAPTER 11 |
| | ) | |
| Matadoor Restaurant Group, LLC, | ) | Case No. 25-02698-hb |
| | ) | |
| Debtor. | ) | |
| | ) | |
| Matadoor Restaurant Group, LLC, | ) | |
| | ) | Adv. Pro. No. 25-800____ |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| Stripe, Inc. and DoorDash, Inc. | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## COMPLAINT

Matadoor Restaurant Group, LLC ("Plaintiff" or "Debtor"), the debtor and debtor-in-possession in this Chapter 11 case, hereby alleges as follows:

## JURISDICTION AND VENUE

1. This is an adversary proceeding pursuant to Fed. R. Bankr. P. 7001, arising under Case No. 25-02698-hb.

2. The Court has jurisdiction pursuant to 28 U.S.C. §§ 1334, 157(a), and Local Civil Rule 83.IX.01 DSC.

3. This is a core proceeding by virtue of 28 U.S.C. § 157(b)(2)(A), (E), and/or (O). Venue is proper in this district pursuant to 28 U.S.C. §§ 1408 and/or 1409.

4. Plaintiff consents to the entry of final order or judgment by the Bankruptcy Court.

5. Plaintiff commences this adversary proceeding in accordance with Rules 7001 and 7065 of the Federal Rules of Bankruptcy Procedure and Rule 65, as applicable, of the Federal Rules of Civil Procedure.

## THE PARTIES

6. Plaintiff is a limited liability company organized under the laws of Florida and is a debtor and debtor-in-possession in Case No. 25-02698 pending in this Court.

7. Plaintiff filed a voluntary petition for relief under Chapter 11 of Title 11 on July 15, 2025 (the "Petition Date"), initiating Case No. 25-02698-hb (the "Bankruptcy" or the "Bankruptcy Case").

8. Upon information and belief, Defendant Stripe, Inc. ("Stripe") is a financial services company with headquarters in San Francisco, California.

9. Upon information and belief, Defendant DoorDash, Inc. ("DoorDash") is an online food ordering and delivery service with its headquarters in San Francisco, California.

## GENERAL ALLEGATIONS

10. Upon information and belief, DoorDash uses Stripe's products and services to process payments, and DoorDash requires merchants using DoorDash's services to, in turn, use the Stripe platform.

11. Upon information and belief, a merchant cannot use DoorDash services without also using Stripe.

12. The Plaintiff operates restaurants and uses DoorDash delivery services in connection therewith.

13. When a restaurant customer places an order through DoorDash, DoorDash collects the amount due to the restaurant from the customer, along with certain service fees charged by DoorDash to the customer.

14. As required by DoorDash, the Plaintiff has an account with Stripe to process and facilitate payments due from DoorDash to the Plaintiff.

15. DoorDash remits funds to Stripe, which then pays the restaurant/Plaintiff for the customers' orders, minus commissions/fees due to DoorDash and/or Stripe.

### LIEN HOLDS AND COMMUNICATIONS WITH DEFENDANTS

16. Upon information and belief, on or around June 30, 2025, DoorDash and/or Stripe received a notice from Lieberman and Klestzick, LLC ("L&K") on behalf of Apex Funding Silver LLC ("Apex") regarding a lien on the Debtor's account ("Apex Lien").

17. Upon information and belief, DoorDash and Stripe ceased remitting funds to the Debtor upon receipt of the Apex Lien.

18. On July 15, 2025, the Plaintiff filed its Petition initiating the Bankruptcy Case, for which DoorDash received notice as it was on the mailing matrix for notice.[1]

19. On July 22, 2025, the Plaintiff, through counsel, specifically notified DoorDash and Stripe, via email attached as **Exhibit A**, of the Bankruptcy Case, and directed them to lift any hold placed on the Plaintiff's account and immediately transmit the funds to the Plaintiff.

20. Despite this notice, DoorDash and Stripe failed to remit any funds to the Plaintiff.

21. On July 25, 2025 (post petition), DoorDash sent an email notification to the Plaintiff, attached as **Exhibit B.1**, stating: **"Stripe has received a notice requiring us [DoorDash/Stripe] to withhold all future payments to you . . . . Under this notice,**

---

[1] See BK ECF 1.

**Stripe is prohibited from transferring any monies owed to you until . . . we receive notice that the hold can be released. DoorDash is legally obligated to comply with this notice, and this email is a notice to you of our intent to do so."** ("Mynt Hold"). The email further indicated that questions should be directed to Stripe at the email address provided, or to the creditor Mynt Advance.

22. Within a couple of hours, DoorDash sent another, nearly identical email to the Plaintiff, attached as **Exhibit B.2**, with the same information and statements, but referring to a different creditor, Galt Funding Co ("Galt Hold").

23. In response, counsel for the Plaintiff sent another email notification to DoorDash and Stripe on July 25, 2025, attached as **Exhibit C.1**, again attaching the Notice of Bankruptcy, confirming the automatic stay and that the accounts are property of the Bankruptcy estate, and reiterating that any hold should be lifted and funds are to be transmitted to the Plaintiff.

24.  Despite this further notice, DoorDash and Stripe failed to remit any funds to the Plaintiff.

25. Counsel sent another email notice to DoorDash on July 28, 2025, this time to the email address of each DoorDash employee with whom the Plaintiff had contact, attached as **Exhibit C.2**, again notifying DoorDash of the Bankruptcy and automatic stay, and requesting that someone from their Legal Department respond.

26. On July 29, 2025, counsel for the Plaintiff was contacted via email by an attorney representing DoorDash ("DD Attorney"). DD Attorney asserted that the liens had been placed by Stripe, rather than by DoorDash (which Plaintiff disputes), and that the records indicated that there were three (3) separate liens affecting the Plaintiff's account: one (1) placed by L&K (regarding the Apex Hold), and two (2) placed by Ace Recovery Group LLC ("Ace") (regarding the Mynt Hold and the Galt Hold).

27. On July 29, 2025, L&K provided a lien release to Stripe as to the Apex Hold, attached as **Exhibit D**, directing Stripe to release funds that have accumulated from the Petition Date forward to the Plaintiff, but asserting that "funds that are from prior to 07/15/2025, shall remain on hold."

28. Via a phone call with Ace on or about July 29, 2025, Plaintiff's counsel was assured that Ace had submitted lien releases to Stripe as to the Mynt Hold and the Galt Hold, and Ace later provided a copy of the releases, attached as **Exhibits E & F**, which were dated July 25, 2025.

29. Despite these lien releases, DoorDash and Stripe continued to hold the Plaintiff's funds and failed to remit any funds to the Plaintiff.

30. For the next week, Plaintiff's counsel continued to seek an amicable resolution of the continued holds by DoorDash and Stripe on the Plaintiff's account, and had numerous communications with L&K to attempt to resolve the "partial release" as to the Apex Hold, while the Plaintiff simultaneously worked directly with DoorDash to seek a release of the funds.

31. On August 4, 2025, DoorDash stated in an email to the Plaintiff, attached as **Exhibit G**, "Our counsel has been in direct contact with your team to finalize the immediate release and deposit of the post-July 15 Matador [sic] funds."

32. Despite this assurance by DoorDash, there was no release or deposit of the funds.

33. On August 8, 2025, Stripe sent an email, attached as **Exhibit H.1**, confirming the receipt of the lien releases from Ace and from L&K, but asserting that L&K "asked us for a partial release which we cannot do as per our process."

34. On August 8, 2025 (post petition), DoorDash sent an email notification to the Plaintiff, attached as **Exhibit H.2**, stating: **"Stripe has received a notice requiring us [DoorDash/Stripe] to withhold all future payments to you . . . . Under this notice, Stripe is prohibited from transferring any monies owed to you until . . . we receive notice that the hold can be released. DoorDash is legally obligated to comply with this notice, and this email is a notice to you of our intent to do so."** ("Link Hold"). The email further stated: **"In order for the liens to be released, we [DoorDash/Stripe] do require that the secured party send the notarized lien release document(s) to Stripe at LLG-notices@stripe.com."**

35. The Link Hold notification from DoorDash dated August 8 was concerning a new lien hold, from a different creditor, Link Advance.

36. Although DoorDash and Stripe apparently did not take action on the Link Hold until August 8, 2025, the notice to Stripe, attached here as **Exhibit I**, was dated June 25, 2025 (pre petition).

<u>**SIMULTANEOUS COURT FILINGS RELATING TO TURNOVER**</u>

37. On the Petition Date, the Plaintiff filed a Motion for the entry of an order (1) authorizing, but not directing, it to continue its Cash Management System and to maintain the Cash Management Accounts, (2) confirming that the automatic stay is in effect as to the Cash Management Accounts, and (3) ordering that all amounts therein be turned over to the Plaintiff in the ordinary course of business, minus the standard fees charged by the Cash Management vendors (the "Turnover Motion").[2]

38. An Order was entered on July 21, 2025, partially granting the relief (the "Initial Order").[3]

---

[2] BK ECF 4.
[3] BK ECF 29.

39. The Initial Order specifically provided that the automatic stay is in effect as to the Cash Management Accounts.

40. With respect to the turnover request, the Initial Order directed any entity in control of a Cash Management Account[4] or claiming an interest therein to review 11 U.S.C. §§ 542 and 543, and further provided that any objection to the requested turnover relief shall be filed with the Court and served on Debtor's counsel on or before August 7, 2025.

41. Notice of the Turnover Motion and the Initial Order were served on DoorDash through its Registered Agent, and on Stripe,[5] and were also served on Apex.[6]

42. The Initial Order further provided that if no objection was timely filed, the Court may grant the turnover relief requested without further notice or hearing, but that if an objection was filed, a hearing would be held on August 13, 2025.

43. No objection to the turnover request was filed, but the matter remained on the docket for hearing on August 13, 2025.

44. A hearing was held on August 13, 2025, at which time Plaintiff's counsel informed the Court of the apparent dispute concerning the pre-petition lien hold by L&K; however, neither L&K nor any other party appeared at the hearing or filed an objection to the turnover relief requested.

45. The Court entered an Order granting the turnover relief on August 13, 2025 ("Turnover Order").[7]

---

[4] Defined in the Motion and Initial Order as including credit card processors, and including third-party delivery services which collect funds from sales and then transmit the funds, minus standard fees, to the Debtor (specifically including DoorDash).
[5] BK ECF 51.
[6] BK ECF 11; BK ECF 40.
[7] BK ECF 79.

46. The Turnover Order was provided to DoorDash, through its counsel, and to Stripe, via the email attached as **Exhibit J**, on August 14, 2025, along with a directive by Plaintiff's counsel that all funds should be transferred to the Plaintiff within the next 24 hours.

47. DoorDash and Stripe were also holding funds belonging to affiliates of the Plaintiff who are in their own chapter 11 cases, and a Turnover Order was obtained in those cases as well. The funds of these affiliates were deposited to those debtors' accounts on August 15, 2025, within 24 hours after notice of the Turnover Orders was provided. However, no funds were deposited to the Plaintiff in the case at bar.

48. Despite notice of the Turnover Order, DoorDash and Stripe have failed to remit any funds to the Plaintiff at the time of this filing.

### FOR A FIRST CAUSE OF ACTION
**(Temporary, Preliminary, and Permanent Injunction against Stripe and DoorDash)**

49. Plaintiff repeats and realleges the allegations contained in the above paragraphs as if fully set forth verbatim herein.

50. Stripe and DoorDash have withheld funds from the Debtor based on lien notices received and/or processed by Stripe and DoorDash after the Petition Date, namely the Mynt Hold, the Galt Hold, and the Link Hold.

51. Despite having actual knowledge of the Bankruptcy, Stripe and DoorDash acted on the Mynt Hold, Galt Hold, and Link Hold after the Petition Date, to freeze the Debtor's account.

52. Stripe and DoorDash have placed improper and illegal post-petition requirements on the Debtor for the release of the Debtor's funds, namely that the Debtor satisfy the debt(s) or that the secured party(ies) send notarized lien release documents to Stripe.

53. The Debtor is entitled to a temporary restraining order, preliminary injunction, and a permanent injunction enjoining Stripe and DoorDash from placing any hold on the Debtor's account during the pendency of the Bankruptcy, or freezing the Debtor's account in any way.

54. The Debtor is entitled to a temporary restraining order, preliminary injunction, and a permanent injunction enjoining Stripe and DoorDash from transferring any funds in the Debtor's account to any person or entity other than the Debtor.

55. The Debtor requests that, in connection with such injunction, Stripe shall be ordered to transmit and deposit all funds in the Debtor's account to the Debtor's debtor-in-possession bank account, minus only the standard fees charged by Stripe and/or DoorDash.

56. The Debtor and the Debtor's estate will be irreparably harmed if the requested relief is not granted, as the Debtor has already been denied use of over $100,000.00 that has accumulated in its account. These funds are critical for the Debtor's operations and for the reorganization. The inability of the Debtor to use these funds has caused and will continue to cause the Debtor to be unable to meet its operating expenses.

57. The injury to the Debtor's estate outweighs whatever damage the proposed injunction may cause to Stripe and/or DoorDash.

58. In light of the foregoing and the present facts, and the potential for more damage to the Debtor's estate and harm to the Debtor's creditors, the balance of the equities strongly favors entry of the requested preliminary injunction.

### FOR A SECOND CAUSE OF ACTION
**(Action to Compel Stripe and DoorDash to Abide by Court's Turnover Order, and alternatively, Action for Turnover)**

59. Plaintiff repeats and realleges the allegations contained in the above paragraphs as if fully set forth verbatim herein.

60. The Court has already issued the Turnover Order, requiring that any entity in control of a Cash Management Account, including any of the Debtor's accounts with DoorDash, to turn over all amounts in such accounts to the Debtor, minus only the standard fees charged by the account vendors.

61. Stripe and DoorDash were put on notice of the Turnover Order and had the ability to immediately abide by the Order, as they did within 24 hours after notification of identical Turnover Orders in connection with the Debtor's affiliates, yet they failed and refused to do so.

62. The Debtor seeks an Order compelling Stripe and DoorDash to abide by the Turnover Order and immediately turnover the funds in the Debtor's account, to the Debtor.

63. The Debtor reserves the right to seek sanctions or other remedy for contempt of court for failure to abide by the Turnover Order, and for failure to abide by the Initial Order.

64. Alternatively, and out of abundance of caution, the Debtor seeks an order pursuant to 11 U.S.C. § 542 and/or § 543 ordering and compelling Stripe and DoorDash to immediately turnover all amounts in the Debtor's account, minus only standard fees, to the Debtor and to account for such property.

**FOR A THIRD CAUSE OF ACTION**
**(Violation of Stay; 11 U.S.C. § 362(k))**

65. Plaintiff repeats and realleges the allegations contained in the above paragraphs as if fully set forth verbatim herein.

66. Defendants violated the automatic stay found in 11 U.S.C. § 362.

67. Defendants, with actual knowledge of the Bankruptcy, illegally placed and/or enforced post-petition holds on the Debtor's account, in violation of the automatic stay.

68. Defendants, with actual knowledge of the Bankruptcy, sought to collect or recover claims of creditors against the Debtor, post-petition, in violation of the automatic stay.

69. Defendants, with actual knowledge of the Bankruptcy, exercised control and possession over property of the Debtor's estate, post-petition, in violation of the automatic stay.

70. Defendants, with actual knowledge of the Bankruptcy, exercised control and possession over property of the Debtor's estate, post-petition, in violation of the automatic stay.

71. Defendants, with actual knowledge of the Bankruptcy, enforced, post-petition, or aided and abetted enforcement of, a lien against the Debtor, in violation of the automatic stay.

72. Defendants, with actual knowledge of the Bankruptcy, exercised control and possession over property of the Debtor's estate, post-petition, in violation of the automatic stay.

73. Defendants actions in violation of the automatic stay were willful and intentional.

74. The Debtor has been damaged by the Defendants' willful violation of the stay in numerous ways, including but not limited to:

    a. Withholding funds from the Debtor which caused the snowball effect of causing the Debtor to delay paying some creditors, which in turn caused the Debtor to spend valuable time and resources communicating with such creditors concerning the delay of payments, and also causing costly disruptions in operations due to delays in ordering food and other essential items, and further necessitated that the Debtor seek orders pursuant to 11 U.S.C. § 365(d)(3) for an extension of time to pay rent;

    b. Valuable time and resources were necessarily devoted to communications with the Defendants for a release of the funds, when such time and resources should have

been devoted to the reorganization efforts of the Debtor, detrimentally affecting the Bankruptcy case;

c. The holds on the Debtor's account caused issues with closing the Debtor's pre-petition accounts and transitioning to the debtor-in-possession accounts, further disrupting the business operations of the Debtor;

d. Significant legal fees and costs were incurred by the Debtor due to the violation of stay by the Defendants and the snowball effect this had on the administration of the estate; and

e. Other damages to be determined.

75. Pursuant to 11 U.S.C. § 542(k), the Debtor is entitled to recovery actual damages, including costs and attorney's fees, and may recovery punitive damages.

76. Given the egregious actions of the Defendants, including but not limited to their disregard of the unequivocal release of lien by Apex as of July 29, 2025 of the hold on post-petition amounts, and the additional hold placed on the Debtor's account by Defendants on August 8, 2025 (a full 24 days after the Petition Date), the Debtor seeks punitive damages against the Defendants taking into consideration the harm caused to the Debtor, in an amount to deter future wrongdoing, which is proportional to the financial condition of the Defendants.

WHEREFORE, having fully set forth its Complaint, the Plaintiff prays that the Court issue an Order and Judgment as follows:

(a) A temporary restraining order, preliminary injunction, and a permanent injunction enjoining Stripe and DoorDash from placing any hold on the Debtor's account during the pendency of the Bankruptcy, or freezing the Debtor's account in any way;

(b) A temporary restraining order, preliminary injunction, and a permanent injunction enjoining Stripe and DoorDash from transferring any funds in the Debtor's account to any person or entity other than the Debtor;

(c) An Order directing Stripe to transmit and deposit all funds in the Debtor's account to the Debtor's debtor-in-possession bank account, minus only the standard fees charged by Stripe and/or DoorDash;

(d) An Order compelling Stripe and DoorDash to abide by the Turnover Order and to immediately turnover the funds in the Debtor's account, to the Debtor;

(e) Reserving the rights of the Debtor to seek sanctions or other remedy for contempt of court for failure to abide by the Turnover Order, and for failure to abide by the Initial Order;

(f) Alternatively, issuing another Order pursuant to 11 U.S.C. § 542 and/or § 543, directing and compelling Stripe and DoorDash to turnover all amounts in the Debtor's account, minus only standard fees, to the Debtor and to account for such property;

(g) Issuing judgment against Defendants for violation of the automatic stay, in favor of the Debtor;

(h) Awarding the Debtor actual damages, including the Debtor's costs and attorney's fees;

(i) Awarding punitive damages to the Debtor, against Defendants; and

(j) Such other and further relief as the Court may deem appropriate.

RESPECTFULLY SUBMITTED on this 18th day of August, 2025.

BARTON BRIMM, PA

BY:    /s/ Christine E. Brimm
       Christine E. Brimm, #6313
       P.O. Box 14805
       Myrtle Beach, South Carolina 29587
       Tele: (803) 256-6582
       cbrimm@bartonbrimm.com
       Attorney for the Plaintiff-Debtor